# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### Urbana Division

| | |
|---|---|
| **ROBERT NOBLE,** | |
| **Plaintiff,** | |
| v. | Case No. 12-2136 |
| **VILLAGE OF ELLIOTT, ILLINOIS, a municipal corporation, WYATT'S COLLISION REPAIR, LLC, TRACY MOTT, in his individual capacity, CURTIS MILLER, in his individual capacity, and FORD COUNTY, Illinois, a municipal corporation,** | |
| **Defendants.** | |

## ORDER

This case arises out of an incident in which a vehicle bearing expired license plates was towed from where it was parked in front of Plaintiff Robert Noble's residence. Plaintiff filed a Verified Complaint at Law (#1-2) on April 3, 2012 in Ford County, alleging that the Defendants deprived him of his civil rights in connection with the towing. Plaintiff alleges, in Count I, unreasonable search and seizure in violation of the Fourth Amendment to the United States Constitution, the Civil Rights Act of 1964 (42 U.S.C. §§ 1983, 1988), and the Illinois Constitution. In Count II, Plaintiff alleges that Defendants deprived him of property without due process of law in violation of the Fourteenth Amendment to the United States Constitution, the Civil Rights Act of 1964 (42 U.S.C. §§ 1983, 1988), and the Illinois Constitution. In Count III, Plaintiff claims that he has not been afforded the equal protection of the law in violation of the Fourteenth Amendment to the United States Constitution, the Civil Rights Act of 1964 (42 U.S.C. §§ 1983, 1988), and the Illinois Constitution. Finally, in Count IV, Plaintiff claims that Defendants trespassed upon his property when they completed the towing. The matter was subsequently removed to federal court.

In March 2014, Defendants Village of Elliott, Tracy Mott, and Wyatt's Collision Repair, LLC (the "Village Defendants") filed a Motion for Summary Judgment (#71). Defendants Ford County and Curtis Miller (the "County Defendants") also filed a Motion for Summary Judgment (#77). Plaintiff responded (#82 and #83) and Defendants replied (#90 and #91). In addition to his response, Plaintiff filed a Motion to Bar and Exclude Defense Witnesses and Evidence and for Appropriate Sanctions (#80). All Defendants responded (#85 and #86). For the reasons outlined below, the Motions for Summary Judgment **(#71, #77)** are **GRANTED** and the Motion to Bar and Exclude Defense Witnesses **(#80)** is **DENIED.**

## I.   Background

The following facts are undisputed, unless otherwise noted. At the time of the incident in question, Plaintiff resided at an apartment building located at 214 Market Street, Elliott, Illinois. There is an approximately 25 foot by 15 foot gravel area in front of the building, with the 15 feet stretching from the edge of the street toward the apartment building. Plaintiff owned four vehicles, including a Dodge Intrepid. At all relevant times, the Intrepid was parked with its back end facing the house and its front end facing the street on the gravel parking area. The front of the Intrepid was 32 feet and 5 inches from the center of Market Street.[1]

On March 15, 2010, Plaintiff received a letter signed by Ellen M. Lee on behalf of the Village of Elliott. This letter referenced Elliott Ordinance §§ 4-1-2 and 4-1-4, and alerted Plaintiff to his failure to comply with the ordinance regarding "inoperable motor vehicles." It stated that this failure "has resulted in [Plaintiff's] vehicles being tagged for removal pursuant to ordinance. If the vehicles are not removed or brought into compliance within Seven (7) days of your receipt of this notice, the vehicles will be towed and you will be responsible for towing and storage fees." Plaintiff contends that only one vehicle on his property, his son's 1989 Dodge Spirit, was tagged with a tow sticker. At that time, the Spirit was non-functional, and covered with a tarp. The Intrepid, on the other hand, was in working condition, but had expired license plates. One week later, the Spirit was sold for scrap. The Intrepid, however, remained on the property.

---

[1] There is some ambiguity in the record regarding the exact placement of the vehicle based on certain estimates that were made in a deposition. However, Plaintiff has represented to the Court that he has measured the distance and that this is the accurate figure.

On April 9, 2010, Defendant Mott, Defendant Miller, and Ken Wyatt (of Defendant Wyatt's Collision Repair) arrived at Plaintiff's home. The Intrepid's license plates had not been updated. Defendant Mott requested that Mr. Wyatt tow the Intrepid from the scene, and he complied. Plaintiff retrieved his vehicle approximately seven days later from Wyatt's Collision Repair. Plaintiff alleges that, while there was no visible damage to the vehicle, a chain saw that had been in the vehicle was missing. Plaintiff further alleges that approximately six months later, the chainsaw reappeared on Plaintiff's property, but was not in working condition.

## II.     Motion to Bar and Exclude Witnesses and Evidence

Defendants have supplied the court with various affidavits in support of their Motions for Summary Judgment. Among these is the Declaration of Candice D. Short, which includes, as an exhibit, a certificate signed by Linda Kellerhals.

Plaintiff has moved to bar and exclude testimony and evidence presented by proposed witnesses Candice D. Short and Linda Kellerhals, arguing that these witnesses were disclosed after the close of discovery. Plaintiff points to the Discovery Order (#16), which required Defendants to disclose expert witnesses by May 1, 2013. None of the Defendants disclosed any expert witnesses nor provided any expert reports during discovery. October 7, 2013 marked the close of discovery. Plaintiff asserts that on October 9, 2013, Defendants Miller and Ford County served Plaintiff with Supplemental Rule 26 Disclosures, which listed both Ms. Short and Ms. Kellerhals as witnesses. The Supplemental Disclosure did not identify either as an expert witness or provide any expert report. On March 7, 2014, Plaintiff's counsel received Defendants Village of Elliott, Tracy Mott, and Wyatt's Collision Repair LLC's Supplemental Rule 26(a)(1) Disclosures, also listing both Ms. Short and Ms. Kellerhals as witnesses. Again, neither witnesses was identified as an expert witness in this disclosure.

Plaintiff argues that he was prejudiced by the untimely disclosure of the witnesses, Ms. Short in particular, because he was "denied any opportunity to depose the expert witness as to her qualifications and opinions; denied an opportunity to disqualify the expert witness at deposition and … denied the ability to engage in normal discovery regarding gathering opinions

3

in opposition to this witness' opinions." This raises three issues for the Court: (1) are the tendered witnesses properly categorized as "expert" witnesses; (2) were they disclosed in a timely fashion; and (3) what prejudice, if any, has Plaintiff experienced.

**1. Expert Testimony**

Plaintiff contends that Candice Short, in her declaration, "offers expert opinions which involve the interpretation of legal documents, interpretation of legal descriptions of real property and the interpretation of land maps, easements, land photographs," and that Defendants failed to disclose her as an expert witness or any of her qualifications as such. Defendants argue that Ms. Short is not an expert but simply a keeper of records testifying to the contents of such records regarding the property line. The Court agrees with Defendants. Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The Declaration of Candice D. Short establishes her position as the Ford County Supervisor of Assessments, and the responsibilities thereof. One of her responsibilities is to maintain tax maps on behalf of the County. She describes the manner in which these maps are created and then explains that the property at issue "includes Lots 5, 6, 7, and 8 … in the Village of Elliott." She also introduces the plat of the Village as well as a GIS map[2] for Block 5 of the Village, which are both kept as official public records. The only opinion given is that the GIS map, a public record, is accurate. Nothing in Ms. Short's declaration indicates that she has taken any principles or methods and applied them to the facts of this case. Instead, she has simply attested to the

---

[2] According to Ms. Short's Declaration, Ford County uses the Geographic Information System ("GIS") to maintain tax maps. These maps are created by taking aerial photography of the county and overlaying parcel, lot, and easement lines, among other things, over the photographs by taking data from deeds, plats, and surveys. The GIS maps are recorded with the Ford County Recorder's Office.

provenance and accuracy of public records. Therefore, the Court does not find that the Declaration can reasonably be considered "expert testimony" in this matter.

**2. Timeliness of Disclosure**

Plaintiff argues that the witnesses were disclosed after the close of discovery, on October 9, 2013 by one set of Defendants, and on January 13, 2014 by the other set. Defendants counter that the witnesses were timely disclosed on October 7, 2013 by Defendants Miller and Ford County under the operation of the mailbox rule. The record in this case supports such a conclusion, as these Defendants filed a Certificate of Service for the Supplemental Rule 26 Disclosures on October 7, 2013 indicating that service had taken place that same day.[3] This certificate of service was never challenged by Plaintiff. Plaintiff, therefore, had timely notice of the non-expert witnesses.

**3. Prejudice**

Plaintiff argues that he was not afforded an opportunity to elicit deposition testimony or challenge Ms. Short's credentials, and that he had "no opportunity … to attempt to resolve discovery differences and then make a motion to compel proper discovery because all discovery was closed on October 7, 2013," and the alleged violations occurred thereafter. However, as Plaintiff notes in his own motion, the Court, on December 5, 2013, reopened discovery for the limited purpose of allowing the defense to depose Larry Reynolds and Duane Wilson. Plaintiff could have moved to reopen discovery as to Ms. Short and Ms. Kellerhals at any time before the Motions for Summary Judgment were filed. The fact that Plaintiff did not choose to further investigate these witnesses, whose sole role is to testify to the authenticity of public records, is not an adequate reason to bar their testimony.

Therefore, the Court will consider the Declaration of Candice D. Short and all exhibits attached thereto. Plaintiff's Motion to Bar and Exclude Defense Witness and Evidence and for Appropriate Sanctions **(#80)** is **DENIED** in its entirety.

---

[3] Even if service had been made two days after the close of discovery, as Plaintiff suggests, his argument of prejudice is undermined by the fact that Plaintiff's attorney, according to her own certificate of service (#43), served supplemental responses to requests to produce on October 10, 2013, a day after she allegedly received Defendants' supplemental disclosures.

### III. Motions for Summary Judgment

In March 2014, the Village Defendants filed a Motion for Summary Judgment (# 71), arguing: 1) all of Plaintiff's claims fail because the unlicensed car was on public, not private, property when towed; 2) Plaintiff's claims against the Village of Elliott and Mayor Mott fail because they are both entitled to absolute legislative immunity, the Mayor is entitled to qualified immunity for his actions; and 3) Plaintiff failed to exhaust all other remedies prior to bringing his federal claims. Also in March 2014, the County Defendants filed a Motion for Summary Judgment (# 77), arguing: 1) Plaintiff's claims against Defendant Miller did not violate his Fourth Amendment rights because the seizure of the vehicle took place on the public street without need for prior notice; 2) there is no evidence that Defendant Miller singled Plaintiff out in any way or otherwise violated his rights to equal protection of the laws; 3) there is no evidence to support Plaintiff's claim that Defendant Miller trespassed upon his property and this claim is further barred by the statute of limitations; 4) Plaintiff failed to exhaust all other remedies prior to bringing his federal claims; 5) Defendant Miller is entitled to qualified immunity; and 6) because Plaintiff's claims against Defendant Miller fail, Defendant Ford County must be dismissed as well. As the two motions overlap significantly in their arguments, they will be addressed together, unless otherwise noted.

Because the Court finds Defendants' arguments on the merits of the claims dispositive, this Order will not address the immunity arguments or those regarding the exhaustion of remedies.

### A. Legal Standard

Summary judgment is only appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, the substantive law applicable to a case "will identify which facts are material." *Id.* A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *accord Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The moving party bears the initial burden to "put[] forth evidence showing the absence of a genuine dispute of material

fact." *Carroll*, 698 F.3d at 564. Once the moving party does so, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Id.* In determining whether a genuine issue of material fact exists, the Court views all facts and draws all reasonable inferences in favor of the nonmoving party. *Jajeh v. Cnty. of Cook*, 678 F.3d 560, 566 (7th Cir. 2012). However, to establish a "genuine" factual dispute, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and mere speculation or conjecture will not suffice, *see Borcky v. Maytag Corp.*, 248 F.3d 691, 695 (7th Cir. 2001) (collecting cases).

### B. Public Property

Count I of Plaintiff's Complaint alleges unreasonable search and seizure, alleging that Defendants entered his private property and seized his vehicle, parked "within the curtilage of his private property," without a warrant and without affording Plaintiff an opportunity for a pre-deprivation hearing. Count II alleges that these same actions constituted deprivation of property without due process of law, again alleging that the vehicle was parked on Plaintiff's private property. Count III, alleging violation of equal protection of the law, similarly alleges that the vehicle was on private property, that Defendants "illegally seized his private property," and that they did not do the same for numerous other vehicles belonging to other property owners. Finally, Count IV alleges trespass against all Defendants for the towing, alleging that they entered upon his property to tow the vehicle. The Court will, therefore, first address the question of whether the vehicle was parked on public or private property.

Plaintiff has stated that his car was parked 32 feet, 5 inches from the center of Market Street. Defendants contend that the car was on public property. In support, they have provided the Court with the Declaration of Candice Short, Ford County Supervisor of Assessments, which contextualizes certain public records. The Declaration describes the manner in which tax maps are made and maintained. It also attaches, as an exhibit, the deed for Plaintiff's property and a GIS map that outlines the boundaries of the property described in the deed. The map clearly shows that Plaintiff's property line is flush with the 80-foot wide right-of-way, whose center is marked by a dotted line running through the approximate center of Market Street. The map is,

therefore, consistent with Ms. Short's testimony that the right-of-way extends approximately forty feet from the center of the road. Finally, this right-of-way is referenced in the 1874 village dedication on record with the Ford County Recorder of Deeds, and illustrated on the accompanying plat. Defendants have thus presented evidence, by way of public record, that Plaintiff's property begins approximately 40 feet from the center of Market Street and that the land between the center of the street and the beginning of Plaintiff's property is publicly-owned. In light of this evidence, no reasonable jury could conclude that the car was parked entirely on private property.[4]

Plaintiff has not contested the validity of the deed or the public records presented. However, Plaintiff has argued that the evidence is inadmissible and disputed, and, alternatively that he has an easement by prescription on the gravel area.

1.    **Admissibility of the Evidence**

First, Plaintiff argues in his Response that the Declaration of Candice Short should be stricken, largely for the same reasons that he moved to exclude the testimony and bar the evidence. These arguments have been addressed at length above and, for the reasons set out there, are rejected.

Plaintiff also argues that the 1874 Declaration is disputed evidence and inadmissible, contending that the dedication "does not appear to state anything about the size or use of road easements." Plaintiff is correct that there is no mention of the size or use of road easements. However, the dedication does refer directly to the attached plat, and clearly states that the plat "particularly describes and sets forth … all the streets alleys commons as public ground in said town of Elliott and gives the names with corners boundaries and extent of all such streets and alleys." The attached Plat includes an illustration of Market Street, with an indication of an 80 foot width. This is consistent with Ms. Short's Declaration that "Market Street has an 80 foot right-of-way dedicated for street purposes." Plaintiff then argues that the dedication is invalid because it is not accompanied by a survey, a petition, or an order. Plaintiff cites *Klose v. Mende*,

---

[4] Plaintiff has not alleged, and the Court does not consider here, whether it matters that the car may have been partially parked on private property. The undisputed evidence suggests that approximately 5 feet, 7 inches of the car was on public property.

329 Ill. App. 3d 543 (3d Dist. 2002), in support. In *Klose*, the plaintiffs brought a declaratory judgment action to establish their fee simple title in two roadways. *Klose*, 329 Ill. App. at 544. The plaintiffs held title to the land and challenged an 1856 dedication that purported to dedicate the property for street purposes. *Id.* at 546. The *Klose* court held that Plaintiffs' title established ownership in the face of a dedication that did not meet the requirements of an 1851 law regarding township organization. *Id.* at 547. *Klose* is, however, distinguishable from the present case. In this case, Plaintiff has not claimed that he owns the gravel area through warranty deed, but merely questions the validity of the dedication. In the absence of a claim of superior title, *Klose* does not create a genuine dispute of fact regarding the ownership of the gravel area.

Plaintiff has also alleged that the public records proffered by Defendants are inadmissible unless accompanied by the expert testimony of a surveyor who has conducted a survey of the land, and contends that "the aerial photography and GIS overlay are nothing more than vague approximations of property delineations." Plaintiff cites no authority or evidence to support these assertions and, therefore, creates no more than a metaphysical doubt about the evidence presented, insufficient to create a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Plaintiff then argues, in the alternative, that the Village "abandoned the idea of reserving an 80 foot road easement long ago," citing evidence that buildings have been built within 40 feet of the center of the road, as well as parking areas and gardens placed within 40 feet of the center of Elliott roads. This argument misses the mark. Defendants have not suggested that the Village has an easement over the property in question, but rather that it owns the property. Whether the Village has maintained rights in the area dedicated for a right-of-way or for an easement in other places is immaterial and not properly before the Court.

Therefore, the Court concludes that the evidence offered by Defendant is both admissible and sufficient to demonstrate that the Village owns the land running approximately 40 feet on either side of the center of Market Street.

**2.      Easement by Prescription**

Plaintiff argues, in the alternative, that he has an easement by prescription on the gravel area because he has used it for more than 20 years exclusively, openly, obviously, and continuously, adverse to any claim of any other entity. However, Defendants accurately argue that, under Illinois law, the statute of limitations for adverse possession and easements by prescription "does not run against a municipal corporation in respect to property held for a public use." *Chi. Steel Rule Die & Fabricators Co. v. Malan Constr. Co.*, 200 Ill. App. 3d 701, 709 (1st Dist. 1990) (citing, *inter alia*, *Zemple v. Butler*, 17 Ill. 2d 434, 438 (1959)). Therefore, Plaintiff's claim of easement by prescription necessarily fails.

Accordingly, the Court finds that the Defendants have put forth sufficient evidence to show the absence of a genuine dispute of material fact with respect to the ownership of the property in question. No reasonable jury could conclude that Plaintiff's car was parked on private property at the time of the towing.

### C.  Inoperable Motor Vehicle

Plaintiff asserts at several points in his briefing that his vehicle was "fully operable." However, Plaintiff also admits that his vehicle's registration was not current at the relevant time. While Plaintiff's vehicle may have been in working condition, by Plaintiff's own admission, it qualified under the Village of Elliott's Abandoned and Inoperable Motor Vehicle ordinance, which was modified on August 8, 1995 to define "inoperable motor vehicle" as including a vehicle which, "for a period of at least Seven (7) days, fails to bear current vehicle registration." Section 4-1-4 of the same statute declares all such vehicles to be a nuisance. The Court, therefore, concludes that it is undisputed that Plaintiff's vehicle qualified as an inoperable motor vehicle under the relevant Village ordinance and was, accordingly, illegally parked on public property. With this in mind, the Court will address Plaintiff's claims.

### D.  Federal Claims

Plaintiff has made three federal claims against all Defendants under The Civil Rights Act of 1964, 42 U.S.C. § 1983. Section 1983 does not confer specific rights, but acts as a vehicle for vindicating rights conferred elsewhere. *Spiegel v. Rabinovitz*, 121 F.3d 251, 254 (7th Cir. 1997).

Therefore, in analyzing Section 1983 claims, a court must first pinpoint the specific constitutional right which was allegedly violated and then judge the claim by reference to the specific constitutional standard which governs that right. *Id.*

1. **Deprivation of Property without Due Process of Law**

    Plaintiff contends that the towing of his vehicle constituted deprivation of his property without due process of law, in violation of the Fourteenth Amendment to the U.S. Constitution. Plaintiff alleges that his Due Process rights were violated because he was not given notice or an opportunity for a hearing before his vehicle was towed. Defendants argue that, because the vehicle was on public property, Plaintiff was not entitled to notice or a hearing prior to its removal.

    The Seventh Circuit has addressed the issue of Due Process in the context of vehicle removal from public property. In *Sutton v. City of Milwaukee*, a class action was brought under Section 1983 alleging that various Wisconsin statutes and Milwaukee ordinances relating to the towing, storage, and disposal of abandoned cars and illegally parked cars violated the due process and equal protection clauses of the Fourteenth Amendment. 672 F.2d 644, 644 (7th Cir. 1982). Both the statute and the ordinance at issue authorized traffic officers to direct the removal of any illegally parked car, at the owner's expense. *Id.* at 645. Neither provided for notice or a hearing in advance of removal. *Id.* The Court framed the issue in that case as "whether it is unconstitutional for the state or city to tow an illegally parked car without first giving the owner notice and an opportunity to be heard, unless the illegally parked car is blocking traffic or otherwise creating an emergency." *Id.* The Court, after weighing the costs and benefits, held that "it is not a violation of the due process clause to tow an illegally parked car without first giving the owner notice and an opportunity to be heard with respect to the lawfulness of the tow." *Id.* at 646.

    Plaintiff argues that *Sutton* is inapplicable to this case. First, Plaintiff argues that *Sutton* is distinguishable because it addressed specific parking ordinances. Here, Plaintiff contends, "there is no evidence of any parking ordinances, prohibiting parking on 'public property.'" As discussed above, however, the Village ordinance relating to inoperable motor vehicles clearly

applies to Plaintiff's vehicle and declares it a nuisance. Plaintiff also appears to argue that the provision in the ordinance that follows this declaration creates a right to notice. The provision in question reads as follows: "All persons are required to dispose of any inoperable motor vehicles under their control within seven (7) days after written notice from the corporate authorities commanding such disposition of said inoperable motor vehicle." To the extent that Plaintiff argues that this provision creates a right to notice not granted by the Due Process Clause, the Court disagrees. Nothing in the ordinance suggests that this clause does anything more than create an obligation on the part of the owner once he or she has received such a notice to take proactive action. Additionally, the fact that Plaintiff received such a letter about another vehicle does not entitle him to notice before this vehicle was towed. The Court therefore finds that the analysis in *Sutton* controls in this instance, and Due Process did not require Defendants to afford Plaintiff pre-deprivation notice or an opportunity for a hearing.

**2.    Unreasonable Search and Seizure**

Plaintiff also alleges that Defendants violated his Fourth Amendment rights against unreasonable search and seizure when they towed his vehicle. His Complaint argues that the defendants

> knowingly, willfully, wantonly or recklessly and with a callous disregard for Robert Noble's constitutional rights searched Noble's private property and seized a vehicle belonging to and in the possession of Robert Noble without a judicial warrant, without exigent circumstances and without consent in violation of 42 U.S.C. § 1983 and the Fourth Amendment to the Constitution of the United States.

Defendants argue that no unreasonable search or seizure occurred here because Plaintiff's vehicle was illegally parked on public property, and Plaintiff produces no evidence to suggest that any alleged search of his vehicle was "unreasonable." Plaintiff first argues that a warrant was required, by citing to cases which have required a warrant for removal of vehicles from private property. Given that this Court has already concluded that Plaintiff's vehicle was removed from public property in this case, these authorities are inapposite.

Plaintiff also contends that *Soldal v. Cook County, Illinois* requires a warrant. 506 U.S. 56 (1992). While Plaintiff accurately points out that the Supreme Court held in *Soldal* that the trailer home in question there was "seized" when it was forcibly removed from the trailer park

and that the plaintiff's Fourth Amendment rights were implicated, *Soldal* does not stand for the proposition that removal of an illegally parked vehicle from public property requires a warrant. *Id.* at 61. Indeed, the *Soldal* Court noted that, though it concluded that the Fourth Amendment was implicated in any seizure, "[w]hether the Amendment was in fact violated is, of course, a different question that requires determining if the seizure was reasonable. That inquiry entails the weighing of various factors and is not before us." *Id.* at 61-62. With respect to the reasonableness inquiry in the instant case, *Sutton* is again instructive. In *Sutton*, the Seventh Circuit thoroughly examined the benefits and potential costs of requiring notice and an opportunity for a hearing before towing, and concluded that the "cost of notice and hearing is … the cost of abandoning towing as a method of dealing with illegal parking." 672 F.2d at 646. The Court there concluded that this cost outweighed the potential benefits of the additional safeguards, which were "not required to prevent frequent errors," as the "determination that a car is illegally parked is pretty cut and dried." *Id.* The same reasoning applies here. To require a warrant before a public authority can tow an illegally parked vehicle from public property would be to effectively eliminate the option of towing as a method for dealing with illegal parking. Therefore, the Court concludes that towing the vehicle "without a judicial warrant, without exigent circumstances and without consent" from public property was not unreasonable, and therefore did not violate Plaintiff's Fourth Amendment rights.

### 3.     Equal Protection

Plaintiff's final federal argument is that Defendants have singled him out as a "class of one" and have intentionally treated him differently from others similarly situated, violating his Fourteenth Amendment right to equal protection of the laws. Specifically, Noble alleges that, after his vehicle was towed from the gravel area in front of his house, he "personally observed, in the Village of Elliott, at least 10 abandoned or junk or totally unlicensed vehicles on streets and driveways of other Village of Elliott residents, which had not been tagged, stickered or towed."

Though equal protection claims are most closely associated with governmental classifications that distinguish between certain groups of citizens with respect to specific treatment, an equal protection claim can in some circumstances be sustained even if the plaintiff alleges that the has been "irrationally singled out as a so-called 'class of one.'" *Engquist v.*

*Oregon Dept. of Agr.*, 553 U.S. 591, 601 (2008). When an individual is singled out by the government, "the specter of arbitrary classification is fairly raised, and the Equal Protection Clause requires a 'rational basis for the difference in treatment.'" *Id.* at 602 (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). However, the Supreme Court in *Engquist* noted that it was significant in *Olech* that there was "a clear standard against which departures, even for a single plaintiff, could be readily assessed." *Id.* The Court then recognized that there are certain forms of state action which inherently involve discretionary decision-making. *Id.* at 603. In these cases, "treating like individuals differently is an accepted consequence of the discretion granted," and "allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise." *Id.* The Court went on to examine the example of a traffic officer stopping and ticketing only one speeder among several, even for no discernible or articulable reason. *Id.* at 603-04. The Court concluded that allowing an equal protection claim in such a case is incompatible with the inherent discretion involved in such law enforcement duties and improper. *Id.* at 604.

      For the reasons that the Supreme Court identified in *Engquist*, the class-of-one theory of equal protection is a poor fit for the instant case. In this case, the undisputed evidence shows that Plaintiff's vehicle was illegally parked on public property, and that Defendants had the authority to remove the vehicle. Defendants cannot be expected to tow every offending vehicle simultaneously. The fact that other similar vehicles remained on what may be public property after Plaintiff's vehicle was towed does not create a class-of-one claim, as enforcing the ordinance is an inherently discretionary task. Plaintiff also claims that the ordinance was enforced against him due to animus on the part of Mayor Mott, acting in concert with another Village resident who had "vowed to run [Plaintiff] out of town." However, there is no concrete evidence presented by Plaintiff that any animus between the Mayor and Plaintiff was the driving force behind the towing. The Seventh Circuit has noted that, if a defendant "would have taken the complained-of-action anyway, even if it didn't have the animus, the animus would not condemn the action." *Olech v. Village of Willowbrook*, 160 F.3d 386, 388 (7th Cir. 1998). Here, the only evidence that Plaintiff presents of animus is his statements in an affidavit that a resident of the Village of Elliott "vowed to run [him and a neighbor] out of town, using the mayor's influence and while expressing personal hatred and prejudice" against his family, as well as the

fact that this resident has a reputation as a "mean gossip" who "exerts pressure on the Village of Elliott officials." There is no actual evidence presented that the towing was in any way connected to these alleged threats from a third-party or that any of the Defendants were motivated by such animus. As such, Plaintiff has failed to offer more than mere conjecture regarding the driving force behind the towing, and this conjecture cannot create a disputed issue of material fact sufficient to withstand summary judgment. The Court, therefore, concludes that Plaintiff has failed to present evidence that his equal protection rights were violated.

### E.  State Law Trespass Claim

Plaintiff's final count alleges trespass against all defendants, alleging that Defendants Mott and Miller entered upon his private property to seize his vehicle, and that Wyatt assisted with his tow truck. Defendants have argued that this claim is time-barred as to the government defendants, and that there is no evidence presented that any of the defendants intentionally entered the land in the possession of another or cause a thing or third person to do so. A thorough review of the evidence presented in this case supports the conclusion that there has, indeed, not been any evidence presented to support the conclusion that Defendants impermissibly entered upon Plaintiff's land when they towed the car, given the determination, above, that the car was parked on public property. Therefore, summary judgment for Defendants is warranted as to Count IV.

### IV.   Conclusion

As discussed above, Plaintiff's Motion to Bar and Exclude Defense Witness and Evidence and for Appropriate Sanctions **(#80)** is **DENIED** in its entirety. Additionally, the Court finds that there is no genuine dispute as to any of the material facts and, therefore, Defendants' Motions for Summary Judgment (**#71**, **#77**) are **GRANTED**. The Clerk is directed to enter judgment for Defendants against Plaintiff as to all counts of the Complaint. All other pending motions are DENIED as MOOT.

ENTERED this 8th day of July, 2014.

s/DAVID G. BERNTHAL
UNITED STATES MAGISTRATE JUDGE